No. 13-99001

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

JOHN EDWARD SANSING,

Petitioner-Appellant,

vs.

CHARLES L. RYAN, Director,
Arizona Department of Corrections, *et al*.,

Respondents-Appellees.

On Appeal from the United States District Court
District of Arizona
Case No. 2:11-cv-01035-SRB

## APPELLANT'S REPLACEMENT REPLY BRIEF

JON M. SANDS
Federal Public Defender

Jennifer Y. Garcia (Arizona Bar No. 021782)
Assistant Federal Public Defender
850 West Adams Street, Suite 201
Phoenix, Arizona 85007
(602) 382-2816  (602) 889-3960  facsimile

COUNSEL FOR PETITIONER-APPELLANT

# Table of Contents

Table of Authorities ........................................................................... iii

Introduction ......................................................................................... 1

Argument.............................................................................................. 2

*Certified Issues* ................................................................................... 4

Claim One ........................................................................................ 4

Sansing was denied the right to a jury trial in violation of the Sixth and Fourteenth Amendments to the United States Constitution ............................ 4

I. The district court incorrectly applied Ring when analyzing this claim................................................................................................... 5

II. Respondents are incorrect in their analysis of *Hurst* and *Murdaugh*'s mandates.................................................................. 6

III.Under the proper harmless-error analysis, a rational jury could have assessed the aggravation and mitigation in a way that called for leniency. ...................................................................... 10

Claim Two........................................................................................ 17

Sansing was denied effective assistance of counsel during the penalty phase of his capital murder trial in violation of the Sixth and Fourteenth Amendments to the United States Constitution because counsel failed to investigate and present mitigating evidence................................. 17

I. Exhaustion........................................................................... 17

II. Merits .................................................................................. 18

III. Unreasonable Determination of the Facts.............................. 34

Claim Seven .................................................................................... 35

The trial court and the Arizona Supreme Court violated Sansing's Eighth and Fourteenth Amendment Rights to the consideration of all relevant mitigating evidencewhen, contrary to clearly established federal law, they refused to consider mitigating factors that did not have a "causal nexus" to the crime........................................................ 35

I. Exhaustion........................................................................... 35

II. Merits .................................................................................. 38

Claim Eight ................................................................................46

    Sansing's guilty plea was not knowing, intelligent, or voluntary because the written factual basis established an aggravating factor without Sansing's waiver of privilege against self-incrimination, in violation of the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. ................................................................46

    I.  Exhaustion................................................................................46

    II. Merits ......................................................................................48

Claim Twelve ..............................................................................50

    The trial court violated Sansing's rights under the Eighth and Fourteenth Amendments to the United States Constitution when it failed to find and/or consider the victim's daughter's wishes as a mitigating factor. .......................................................................50

*Uncertified Issue* ...........................................................................51

Claim Four ..................................................................................51

    Sansing was denied effective assistance of counsel in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution because trial counsel failed to properly advise Sansing about the consequences of his plea, stipulated factual basis, and sentencing stipulation...................................................................51

Conclusion ...................................................................................52

Statement of Related Cases..........................................................53

Certificate of Compliance ............................................................54

Certificate of Service ...................................................................55

## Table of Authorities

### Federal Cases

*Alleyne v. United States*, 133 S. Ct. 2151 (2013) .................................................. 8

*Apprendi v. New Jersey*, 530 U.S. 466 (2000) ............................................... 6, 8, 9

*Bloom v. Calderon*, 132 F.3d 1267 (9th Cir. 1997) ................................... 26, 27, 28

*Booth v. Maryland*, 482 U.S. 496 (1987) .............................................................. 50

*Boyde v. California*, 494 U.S. 370 (1990) ............................................................ 51

*Boykin v. Alabama*, 395 U.S. 238 (1969) .............................................................. 49

*Brecht v. Abrahamson*, 507 U.S. 619 (1993) ................................................... 10, 42

*California v. Brown*, 479 U.S. 538 (1987) ............................................................ 42

*Caro v. Calderon*, 165 F.3d 1223 (9th Cir. 1998) ................................................ 23

*Caro v. Woodford*, 280 F.3d 1247 (9th Cir. 2002) ..................................... 26, 27, 28

*Correll v. Ryan*, 539 F.3d 938 (9th Cir. 2008) .................................... 24, 25, 29, 33

*Davis v. Ayala*, 135 S. Ct. 2187 (2015) ............................................................... 10

*Douglas v. Woodford*, 316 F.3d 1079 (9th Cir. 2003) .............................. 20, 22, 25

*Eddings v. Okla.*, 455 U.S. 104 (1982) ......................................................... *passim*

*Florida v. Nixon*, 543 U.S. 175 (2004) ........................................................... 49, 50

*Hedlund v. Ryan*, 854 F.3d 557 (9th Cir. 2017) ................................................... 39

*Hendricks v. Calderon*, 70 F.3d 1032 (9th Cir. 1995) .......................................... 32

*Hildwin v. Florida*, 490 U.S. 638 (1989) ......................................................... 3, 45

*Hurst v. Florida*, 136 S. Ct. 616 (2016)..........................................................*passim*

*Johnson v. Zerbst*, 304 U.S. 458 (1938) ............................................................... 49

*Jones v. United States*, 526 U.S. 227 (1999) ......................................................... 6

*Kotteakos v. United States*, 328 U.S. 750 (1946) ................................................. 44

*Lambright v. Schriro*, 490 F.3d 1103 (9th Cir. 2007) ......................... 20, 29, 32, 33

*Lockett v. Ohio*, 438 U.S. 586 (1978) ............................................................. 41, 51

*Martinez v. Ryan*, 566 U.S. 1 (2012) ................................................................... 47

*Mayfield v. Woodford*, 270 F.3d 915 (9th Cir. 2001) ........................................... 23

*McKinney v. Ryan*, 813 F.3d 798 (9th Cir. 2015) .......................................... *passim*

*McKoy v. North Carolina*, 494 U.S. 433 (1990) ............................................. 41, 45

*Miller v. Gammie*, 335 F.3d 889 (9th Cir. 2003) ..................................... 5

*Murdaugh v. Ryan*, 724 F.3d 1104 (9th Cir. 2013) ............................ 5, 7

*O'Neal v. McAninch*, 513 U.S. 432 (1995) ........................................ 44

*Payne v. Tennessee*, 501 U.S. 808 (1991) ......................................... 50

*Penry v. Lynaugh*, 492 U.S. 302 (1989) ................................................. 42

*Picard v. Connor*, 404 U.S. 270 (1971) .................................................. 35

*Ring v. Arizona*, 536 U.S. 584 (2002) ........................................... 4, 7, 45

*Robinson v. Schriro*, 595 F.3d 1086 (9th Cir. 2010) ........................... 31

*Rose v. Lundy*, 455 U.S. 509 (1982) ...................................................... 37

*Sanders v. Ratelle*, 21 F.3d 1446 (9th Cir. 1994) ................................. 26

*Skipper v. South Carolina*, 476 U.S. 1 (1986) ...................................... 51

*Smith v. Stewart*, 140 F.3d 1263 (9th Cir. 1998) .................................. 28

*Smith v. Stewart*, 189 F.3d 1004 (9th Cir. 1999) .................................. 32

*Smith v. Texas*, 543 U.S. 37 (2004) ...................................................... 41

*Spaziano v. Florida*, 468 U.S. 447 (1984) ....................................... 3, 45

*Stankewitz v. Woodford*, 365 F.3d 706 (9th Cir. 2004) ................ 19-20, 24, 32, 33

*Strickland v. Washington*, 466 U.S. 668 (1984) .................................... 30

*Styers v. Schriro*, 547 F.3d 1026 (9th Cir. 2008) ................................. 41

*Summerlin v. Schriro*, 427 F.3d 623 (9th Cir. 2005) ............................ 30

*Tennard v. Dretke*, 542 U.S. 274 (2004) ......................................... 40, 41

*Valerio v. Crawford*, 306 F.3d 742 (9th Cir. 2002) ............................. 11

*Wallace v. Stewart*, 184 F.3d 1112 (9th Cir. 1999) ............................. 23

*Williams v. Taylor*, 529 U.S. 362 (2000) ........................................ 23, 29

*Zant v. Stephens*, 462 U.S. 862 (1983) ................................................. 46

## Federal Statutes

28 U.S.C. § 2254(e)(1) (2012) ........................................................... 1, 2

## State Cases

*Hurst v. State*, 202 So. 3d 40 (Fla. 2016) ......................................... 9-10

*Rauf v. State*, 145 A.3d 430 (Del. 2016) ................................................ 9

iv

*State ex rel. Thomas v. Rayes*, 153 P.3d 1040 (Ariz. 2007) ................................. 2

*State v. Bocharski*, 189 P.3d 403 (Ariz. 2008) ...................................... 15

*State v. Bolton*, 896 P.2d 830 (Ariz. 1995) ...................................... 13

*State v. Chappell*, 236 P.3d 1176 (Ariz. 2010) .................................... 13

*State v. Dann*, 74 P.3d 231 (Ariz. 2003) ..................................... 1

*State v. Djerf*, 959 P.2d 1274 (Ariz. 1998) ............................................ 40

*State v. Gallegos*, 870 P.2d 1097 (Ariz. 1994) ................................. 1

*State v. Gillies*, 691 P.2d 655 (Ariz. 1984) .................................... 13-14

*State v. Hoskins*, 14 P.3d 997 (Ariz. 2000) ..................................... 41

*State v. Lehr*, 38 P.3d 1172 (Ariz. 2002) .............................. 13

*State v. Medina*, 975 P.2d 94 (Ariz. 1999) .................................... 15, 16

*State v. Poland*, 698 P.2d 183 (Ariz. 1985) .......................................... 13

*State v. Sansing*, 26 P.3d 1118 (Ariz. 2001) ................................... *passim*

*State v. Sansing*, 77 P.3d 30 (Ariz. 2003) ........................................ 11, 30, 39, 44

*State v. Schackart*, 947 P.2d 315 (Ariz. 1997) ................................. 14

*State v. Steele*, 921 So. 2d 538 (Fla. 2005) .................................... 3

*State v. Stokley*, 898 P.2d 454 (Ariz. 1995) ........................................ 28

*State v. Thornton*, 929 P.2d 676 (Ariz. 1996) ...................................... 28

*State v. Wallace*, 272 P.3d 1046 (Ariz. 2012) ....................................... 15

*State v. Wallace*, 728 P.2d 232 (Ariz. 1986) ................................... 11, 13

*State v. Wallace*, 773 P.3d 983 (Ariz. 1989) ...................................... 40

## State Statutes

Section 775.082(1), Fla. Stat. .................................... 3

Section 921.141(3), Fla. Stat. .................................... 3

## Introduction

Petitioner-Appellant John Edward Sansing stands by the arguments previously advanced in his replacement opening brief. However, he specifically replies to the following arguments advanced by Respondents.

## Respondents' Statement of the Case

In identifying for the Court the salient facts of Sansing's case, Respondents rely primarily on the facts set forth by the Arizona Supreme Court in the first appellate opinion in Sansing's case. (*See* Answering Br. at 3-5); *State v. Sansing*, 26 P.3d 1118 (Ariz. 2001). Sansing emphasizes, however, that the facts set forth in the state supreme court's decisions are not "findings of fact" entitled to deference by this Court.

Pursuant to 28 U.S.C. § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct." The facts recited by the state supreme court in Sansing's direct appeal opinion, however, were not "determinations of a factual issue." As the Arizona Supreme Court has repeatedly stated, its recitation of facts in criminal appellate opinions present the facts "in the light most favorable to sustaining the verdict." *State v. Dann*, 74 P.3d 231, 236 n.1 (Ariz. 2003); *State v. Gallegos*, 870 P.2d 1097, 1105 (Ariz. 1994). In other words, the appellate court's statement of facts represents the version of facts that most strongly supports the prosecution's case. It does not purport to be an independent

1

or impartial resolution of the factual issues presented in the case. Further, appellate courts generally do not make factual findings. *See, e.g.*, S*tate ex rel. Thomas v. Rayes*, 153 P.3d 1040, 1043 n.2 (Ariz. 2007). Accordingly, the statement of facts as written by the Arizona Supreme Court do not constitute a "determination of a factual issue" within the meaning of 28 U.S.C. § 2254(e)(1), and thus are not entitled to the statutory presumption of correctness.

## Argument

Sansing addresses Respondents' arguments as to his claims below, but also here responds to Respondents' preliminary section titled "Demarcation in Capital Sentencing between the Constitution and the States." (Answering Br. at 17-19.) Respondents state that "[i]t is beyond dispute that the States have the freedom to decide who the actual sentencer will be in a capital case, whether the trial judge, a jury, or a combination of both." (Answering Br. at 17.) This is incorrect. As the Supreme Court recently clarified in *Hurst v. Florida*, 136 S. Ct. 616, 619 (2016), "[t]he Sixth Amendment requires a jury, not a judge, to find each fact necessary to impose a sentence of death."

In addition, *Hurst* also clarified that it is not enough that a jury find the existence of at least one aggravating factor beyond a reasonable doubt; a determination regarding the relative weight of the aggravating and mitigating circumstances is also a factual finding necessary to a defendant's eligibility for a

2

sentence of death. 136 S. Ct. at 622. As explained in *Hurst*, Florida's capital sentencing scheme violated *Ring* because a defendant was not eligible for a death sentence until the trial judge made factual findings regarding the sufficiency of the alleged aggravating and mitigating circumstances and the relative weight of each:

> As described above and by the Florida Supreme Court, the Florida sentencing statute does not make a defendant eligible for death until "findings *by the court* that such person shall be punished by death." Fla. Stat. § 775.082(1) (emphasis added). The trial court *alone* must find "the facts . . . [t]hat sufficient aggravating circumstances exist" and "[t]hat there are insufficient mitigating circumstances to outweigh the aggravating circumstances." § 921.141(3); *see Steele*, 921 So.2d, at 546.

*Hurst*, 136 S. Ct. at 622 (alterations in original). The Court recognized that its holding in *Hurst* required it to overrule previous decisions holding that the Sixth Amendment did not require specific findings authorizing imposition of the death penalty to be made by a jury, *id*. at 623-24 (discussing *Hildwin v. Florida*, 490 U.S. 638, 640-41 (1989), and *Spaziano v. Florida*, 468 U.S. 447 (1984)), but noted that "in the *Apprendi* context, we have found that 'stare decisis* does not compel adherence to a decision whose "underpinnings" have been "eroded" by subsequent developments of constitutional law'" *id.* at 623-24 (citations omitted).

Accordingly, Respondents' discussion as to the first factor they identify is not correct, and is especially inapplicable to Sansing's case because he is now the

sole defendant in Arizona whose case was not final at the time when *Ring v. Arizona*, 536 U.S. 584 (2002), was decided, but did not receive resentencing by a jury. As a result, all of the sentencing decisions in this case were unconstitutionally made by a judge alone.

Respondents' second point in this section discusses the constitutional requirement of individualized sentencing. (Answering Br. at 18-19.) However, based on this Court's decision in *McKinney v. Ryan*, 813 F.3d 798 (9th Cir. 2015) (en banc), it is already settled that Arizona did not provide for individualized sentencing during the time period when Sansing's case was litigated. As a result, neither of Respondents' points in this section can rebut Sansing's arguments in his Opening Brief.

## *Certified Issues*

## Claim One

### Sansing was denied the right to a jury trial in violation of the Sixth and Fourteenth Amendments to the United States Constitution

Sansing stands by the arguments previously advanced in his Opening Brief. In addition, Sansing replies to the following arguments advanced by Respondents. Despite Respondents' arguments to the contrary (Answering Br. at 33-37), the Arizona Supreme Court's holding that the *Ring* error in this case was harmless was flatly unreasonable and cannot stand.

### I.    The district court incorrectly applied Ring when analyzing this claim.

Although Respondents devote a portion of their argument on this claim to a discussion of how *Murdaugh* was wrongly decided by the court, they acknowledge that this Court has a long-standing principle that, "[g]enerally, to preserve circuit consistency, a three-judge panel may not reject prior circuit precedent." (*See* Answering Br. at 20 n.8 (citing *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc).) Accordingly, the Court should disregard that portion of Respondents' argument. In *Murdaugh*, this Court concluded that, because the existence or absence of a mitigating factor was a finding of fact "upon which the increase of a defendant's authorized punishment [was] contingent," the petitioner had a right to have a jury decide those facts. *Murdaugh*, 724 F.3d 1104, 1115 (9th 2013) (citation and internal quotation omitted). Despite Respondents' arguments to the contrary, this panel should not refuse to follow *Murdaugh*'s controlling analysis. Although Respondents argue that the *Murdaugh* opinion is contrary to Supreme Court precedent (Answering Br. at 21), they fail to support that argument.

In addition, this case is distinguishable from *Murdaugh* in a key way—there were two aggravating factors in that case: (F)(1) and (F)(6). Murdaugh did not challenge the Arizona Supreme Court's determination that the government had proven the (F)(1) factor beyond a reasonable doubt. *Murdaugh*, 724 F.3d at 1118. Here, there is only one aggravating factor, and Sansing disputes the evidence

5

relating to that factor. Thus, both the aggravating factor and the mitigating factors are crucial to Sansing's right to individualized sentencing and deserve jury consideration.

## II. Respondents are incorrect in their analysis of *Hurst* and *Murdaugh*'s mandates.

Respondents devote significant time to arguing that this Court's opinion in Murdaugh was wrongly decided and that the recent opinion in *Hurst v. Florida* does not have any application to this case. (Answering Br. at 19-32.) As noted briefly *supra*, they are incorrect.

In *Jones v. United States*, 526 U.S. 227 (1999), the Supreme Court held that "under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Id.* at 243 n.6. Meanwhile, in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Supreme Court determined that "[t]he Fourteenth Amendment commands the same answer [as *Jones v. United States*] in this case involving a state statute." *Id.* at 476. Two years later, in *Ring*, the Supreme Court reaffirmed *Jones* and *Apprendi* by making the principles that they articulated applicable to capital cases:

> If a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact—*no matter how the State labels it*—must be found

6

by a jury beyond a reasonable doubt.

*Ring*, 536 U.S. at 602 (emphasis added); *see also id.* at 607 ("We see no reason to differentiate capital cases from all others in this regard."). Concurring, Justice Scalia said the following:

> I believe that the fundamental meaning of the jury-trial guarantee of the Sixth Amendment is that *all facts essential to imposition of the level of punishment that the defendant receives—whether the statute calls them elements of the offense, sentencing factors, or Mary Jane—must be found by the jury beyond a reasonable doubt.*

*Id.* at 610 (Scalia, J., concurring) (emphasis added).

Because the decision about whether aggravating circumstances outweigh mitigating circumstances is a fact that Arizona makes *essential* to the imposition of a death sentence, and because this determination increases a capital defendant's punishment beyond the maximum penalty authorized under Arizona law for the crime of capital murder, *Ring* and its antecedents dictated that it be found by a jury beyond a reasonable doubt. *See Murdaugh*, 724 F.3d at 1115 ("In [*Ring*], the Supreme Court described several determinations that had to occur under Arizona law before a defendant became death-eligible, including the judge's determination that 'there are no mitigating circumstances sufficiently substantial to call for leniency."); *see also id.* at 1117 (explaining that under *Apprendi* and its progeny, "how a fact is labeled is irrelevant to the *Apprendi* analysis . . . [i]t is the *effect* of a

7

fact that dictates whether a jury must determine it" (emphasis added) (internal citations omitted)); *see also Alleyne v. United States*, 133 S. Ct. 2151, 2155 (2013) (reaffirming the principle that any fact that has the effect of increasing the penalty for a crime must be submitted to the jury).

Making this issue more clear, on January 12, 2016, the Supreme Court issued its decision in *Hurst v. Florida*, 136 S. Ct. 616 (2016), which held that the failure to require a jury to determine the relative weight of aggravating and mitigating factors beyond a reasonable doubt violates the Sixth Amendment right to a jury trial as well as the Fourteenth Amendment Due Process Clause. *Hurst*, 136 S. Ct. at 621. The Court reiterated the Sixth Amendment's basic requirement that "any fact that 'expose[s] the defendant to a greater punishment than that authorized by the jury's guilty verdict' is an 'element' that must be submitted to a jury." *Hurst*, 136 S. Ct. at 621 (quoting *Apprendi*, 530 U.S. at 494). The *Hurst* Court emphasized that under *Ring*, this principle applies with equal force to death penalty sentencing statutes: "The Sixth Amendment requires a jury, not a judge, to find each fact necessary to impose a sentence of death." *Id.* at 619. The Court also recognized that under *Alleyne*, 133 S. Ct. at 2156, a defendant's Sixth Amendment right, "in conjunction with the Due Process Clause, requires that each element of a crime be proved to a jury beyond a reasonable doubt." *Id*. at 621.

The jury's mere involvement in capital sentencing does not, by itself, satisfy

the Sixth Amendment. Rather, a jury "finding" only meets constitutional muster if it is made unanimously, and based on proof beyond a reasonable doubt. *See Apprendi*, 530 U.S. at 498 (Scalia, J., concurring) (stating that charges against the accused, and the corresponding maximum exposure he faces, must be determined "*beyond a reasonable doubt by the unanimous vote of 12 of his fellow citizens*" (emphasis in original)).

*Hurst* stated what prior Sixth Amendment precedent had already laid out—it is not enough that a jury find the existence of at least one aggravating factor beyond a reasonable doubt; a determination regarding the relative weight of aggravating and mitigating circumstances is also a factual finding necessary to a defendant's eligibility for a sentence of death. 136 S. Ct. at 622; *see also Rauf v. State*, 145 A.3d 430 (Del. 2016) (per curiam) (striking down Delaware's capital sentencing scheme on the basis of *Hurst* and determining that the Sixth Amendment requires a jury to find, beyond a reasonable doubt, each aggravating circumstance and that aggravation outweighs mitigation in order to impose a death sentence); *Hurst v. State*, 202 So. 3d 40, 57 (Fla. 2016) (finding that *Hurst* "mandates that all the findings necessary for imposition of a death sentence are 'elements' that must be found by a jury" and holding that "before the trial judge may consider imposing a sentence of death, the jury in a capital case must unanimously and expressly find all the aggravating factors that were proven

9

beyond a reasonable doubt . . . [and] unanimously find that the aggravating factors outweigh the mitigating circumstances").[1] *Hurst* built upon *Ring* and *Apprendi* but it did not create new law; further, it reached an identical conclusion to the one reached by this Court in *Murdaugh*. Despite Respondents' arguments otherwise, *Murdaugh* remains good law and is only bolstered by *Hurst*.

### III. Under the proper harmless-error analysis, a rational jury could have assessed the aggravation and mitigation in a way that called for leniency.

Respondents urge the Court to rest on the district court's denial of Sansing's *Ring* claim, which the district court reached under an AEDPA analysis. As the Supreme Court recently clarified, when reviewing claims like this one involving a state court's harmless-error review, the reviewing court must first find that AEDPA's strictures on relief have been satisfied. *Davis v. Ayala*, 135 S. Ct. 2187, 2198 (2015). Here, Sansing has shown that the Arizona Supreme Court's harmlessness determination itself was unreasonable, thus meeting this standard and allowing the Court to review the underlying constitutional claim under *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Simply the fact that the Arizona Supreme Court applied its unconstitutional causal-nexus test while making the harmless-

---

[1] Respondents argue that the Delaware decision cited above has "little persuasive value" (Answering Br. at 28 n.9); to the contrary, as discussed in these opinions, the highest state courts in both Florida and Delaware have interpreted *Hurst* to include a reasonable doubt requirement regarding the weighing decision, and numerous death-row prisoners have had their sentences changed to life imprisonment or received new sentencing proceedings based on these opinions.

error determination in this case demonstrates the unreasonableness of the state court's finding. *See State v. Sansing*, 77 P.3d 30, 37 (Ariz. 2003).

Under *Brecht*, Respondents must provide "fair assurance" that the error did not have a substantial and injurious effect or influence on the outcome. *Valerio v. Crawford*, 306 F.3d 742, 762 (9th Cir. 2002). If a reasonable factfinder could have been convinced that Sansing deserved a life sentence in this case, the constitutional error had a "substantial and injurious effect" on the verdict. *See id.* at 763. Due to the numerous constitutional errors in this case, Respondents cannot meet this standard. Not only were Sansing's Sixth Amendment rights violated by the unconstitutional judge sentencing in his case, his Eighth Amendment rights were violated by both the state courts' application of an unconstitutional causal-nexus test and by the ineffective assistance of Sansing's counsel at sentencing. Accordingly, the Court should apply the standard in *Brecht* and find that the error here was not harmless.

Respondents are also incorrect in their analysis of the evidence supporting the sole aggravating factor in this case

### 1. "Cruelty" based on victim's consciousness

Where the State fails to prove beyond a reasonable doubt that the victim was conscious at the time of death, the Arizona Supreme Court has held that a finding of cruelty is inappropriate. *State v. Wallace*, 728 P.2d 232, 237 (Ariz. 1986). Thus,

11

Respondents' claims that the victim was conscious, and therefore could suffer mental and physical anguish during the initial stages of the attack, are irrelevant. (Answering Br. at 38-42.) They are not correct.

As an initial matter, the state's medical examiner's testimony is inconclusive, first stating that it was doubtful the victim regained consciousness after she was hit in the head and then stating that it was not medically unlikely or impossible that the victim spoke to Sansing after she had been struck. (ER 1253.) Kara Sansing's initial statement to the police that she heard the victim speak during the sexual assault was later contradicted at trial when she testified that the victim was unconscious after Sansing hit her in the head, prior to the sexual assault. (ER 1354.) Given these inconclusive testimonies, a rational juror could have found that the victim's consciousness was not established beyond a reasonable doubt because all the relevant evidence was contradictory. Because the evidence does not support a finding of this aggravating factor, the lack of a jury had a substantial and injurious effect on Sansing's sentence.

### 2. Cruelty based on the initial struggle.

Respondents take issue with Sansing's assertion that, under Arizona law, cruelty cannot be established if the victim was unconscious at the time of death. (Answering Br. at 41-42.) Respondents state that this was an "inaccurate statement of Arizona law at the time of Calabrese's murder," because (a) the authority

Sansing relied on was "decided over ten years before Calabrese's murder," and (b) the Arizona Supreme Court evaluates the totality of the circumstances surrounding the murder and not just the final act that killed the victim. (*Id*.) First, Respondents offer no support for their assertion that Sansing's cited cases were no longer good law simply because they were decided ten years before the crime occurred. In fact, the Arizona Supreme Court has continued to require such a finding in cases decided after the crime in this case occurred. *See State v. Lehr*, 38 P.3d 1172, 1186 (Ariz. 2002) (striking the trial court's finding of "cruelty" because, *inter alia*, "[t]here was no testimony regarding defensive wounds or anything else that would establish that she was conscious at the time of her death"); *see also State v. Chappell*, 236 P.3d 1176, 1182 (Ariz. 2010) (distinguishing this case from *State v. Poland*, 698 P.2d 183 (Ariz. 1985), because the victim was conscious at the time of death). Accordingly, Arizona law continues to require a finding of the victim's consciousness at the time of death to establish cruelty.

Second, Sansing has not claimed that the "entire murder transaction" is not relevant for the purposes of the cruelty factor. However, the entire murder transaction is not relevant if the victim is unconscious during the infliction of violence. *See State v. Bolton*, 896 P.2d 830 (Ariz. 1995) ("If the evidence is inconclusive as to whether the victim was conscious during the infliction of violence, the court cannot find that the killing was especially cruel." (citing *State v.*

13

*Gillies*, 691 P.2d 655, 660 (Ariz. 1984))).

Respondents cite to *State v. Schackart*, 947 P.2d 315 (Ariz. 1997), to support their proposition that the totality of the circumstances, as opposed to the final act that resulted in death, is considered in finding cruelty. (Answering Br. at 42.) However, in *Schackart*, there is no question as to the victim's consciousness throughout the entire murder transaction. *See Schackart*, 947 P.2d at 325. The victim was clearly conscious, and talking to the defendant, throughout the hours that the attack lasted as well as at the time of death. *Id*. Instead, the defendant argued that the final act of killing occurred too quickly for the victim to suffer pain. *Id.* The Arizona Supreme Court rejected this argument finding that the victim had suffered, while conscious, during the entire attack leading up to the final act of killing. *Id. Schackart* is clearly distinguishable from Sansing's case where there is a serious question as to whether the victim ever regained consciousness after the first blow to the head. Sansing is not arguing that the stabbing of the victim, which was the final act that resulted in death, occurred too quickly to result in pain. Rather, because the victim was unconscious after the first couple of minutes of the attack, including during the rape and stabbing, therefore a finding of cruelty is inappropriate. Accordingly, *Schackart* does not inform the inquiry here.

### 3.    "Heinous or Depraved" Factor

Respondents also argue that any reasonable jury would have found the crime

14

heinous and depraved. (Answering Br. at 42-43.) This is also incorrect. The Arizona Supreme Court has established a two-pronged test necessary to establish gratuitous violence. First, the State must show that the defendant used violence beyond that necessary to kill. Second, the State must also show that the defendant intended to inflict violence after he knew or should have known that a fatal action had occurred. *State v. Wallace*, 272 P.3d 1046, 1049 (Ariz. 2012) (citing *State v. Bocharski*, 189 P.3d 403 (Ariz. 2008)). The first requirement does not, in itself, support a finding of gratuitous violence. As the court has stressed, "[t]he state must also show that the defendant continued to inflict violence *after he knew or should have known that a fatal action had occurred*." *Bocharski*, 189 P.3d at 421 (Ariz. 2008) (emphasis in original). The events that occurred prior to the fatal action were not part of the actual attempt to kill the victim, and thus should not be considered in an analysis of gratuitous violence.

### 4. Mitigating Factors

Respondents also argue that the (G)(1) factor cannot be established under Arizona law if the defendant engages in acts of planning or attempts to avoid detection. (Answering Br. at 44.) However, the Arizona state courts, including the Arizona Supreme Court, have found the statutory mitigating factor in cases where there is clear evidence of planning and evading arrest. For instances, in *State v. Medina*, 975 P.2d 94, 99 (Ariz. 1999), the defendant planned to steal a car and the

car radio, brutally killed the owner of the car, drove off with the co-defendants to evade arrest, and later laughed and relished in the killing he had committed that night. Despite a clear plan of action and attempts to avoid detection, the trial court and the Arizona Supreme Court found that Medina had proven by a preponderance of the evidence that the influence of alcohol, marijuana, and paint fumes at the time of the murder significantly impaired his ability to conform his conduct to the law. *Id.* at 106. Thus, contrary to Respondents' contention, evidence of a plan or self-preservation does not necessarily mean that a defendant is not significantly impaired for (G)(1) purposes, and a jury could have found that Sansing has established this mitigating circumstance.

Furthermore, as Sansing explained more fully in his opening brief and to the court below, Sansing's actions that day were less of a "plan" and more of the actions of a drug addict under the influence of crack cocaine. (*See* Opening Br. at 41.) In a desperate attempt to obtain more drugs, Sansing tried to steal the victim's purse. (Opening Br. at 14.) What happened next was a series of irrational decisions made during a drug-induced psychosis. His significant impairment is all the more evident when considering the fact that after Sansing had come down from his high he immediately turned himself over to the police, expressed extreme remorse, and pled guilty to all of the charges with no promise of leniency from the State. A reasonable factfinder could have found that Sansing's actions met the statutory

16

mitigating circumstances of impaired capacity, or could have given weight to these facts when considering whether Sansing deserved leniency. Further, if a jury had considered the mitigating evidence improperly excluded by both the trial court and the Arizona Supreme Court, *see infra*, the outcome is even more likely to have been different.

When deciding that the *Ring* error in this case was harmless, the Arizona Supreme Court acted unreasonably. The court's decision was unreasonable in light of *Ring*, and was further hampered by the court's failure to consider compelling and weighty mitigation evidence. When reviewing this claim under AEDPA and *Brecht*, it is impossible to say that the decisions here were reasonable and that they could have had no effect on the outcome of Sansing's case.

### Claim Two

**Sansing was denied effective assistance of counsel during the penalty phase of his capital murder trial in violation of the Sixth and Fourteenth Amendments to the United States Constitution because counsel failed to investigate and present mitigating evidence.**

Sansing stands by the arguments previously advanced in his Opening Brief. In addition, Sansing replies to the following arguments advanced by Respondents.

### I.    Exhaustion

In the district court, Respondents argued that the portion of Sansing's claim asserting that trial counsel should have retained a neuropsychologist was not

presented to the state court and was not exhausted. (SER 1519.) The district court disagreed, noting that "from its review of the PCR record, including the evidence and arguments presented during the state court evidentiary hearing, that the entirety of Claim 2 was exhausted. (ER 33.) Respondents did not dispute the district court's ruling on this issue here, so that argument is waived for purposes of the appeal.

## II. Merits

### 1. Deficient Performance

Respondents argue that the PCR court reasonably found that "trial counsel's decision not to present expert testimony at sentencing was a strategic one that followed an extensive mitigation investigation." (Answering Br. at 57.) Respondents' oversimplification of events and counsel's actions masks the depth of counsel's ineffectiveness.

### 2. Limited Mitigation Investigation and Presentation

The defense team did not compile "significant mitigating evidence" as Respondents would have this Court believe. Respondents place great stock in the fact that mitigation specialist Pamela Davis flew to three different states and met with Sansing's family members, including his siblings, Allen and Susan. (Answering Br. at 48-49, 47.) Respondents claim that both Allen and Susan told Davis all pertinent information regarding Sansing's childhood, including

18

information of their mother's abuse and neglect, which Davis summarized in her report to Judge Reinstein. (*Id.*) However, Davis's report itself belies such a statement. Davis's report to Judge Reinstein never mentions that the children suffered abuse and neglect at the hands of their mother. (*See generally* ER 344-57.) In fact, in the 13-page report written by Davis, only one page is dedicated to the abuse Sansing and his siblings suffered as children. (ER 349.) In a couple of paragraphs, Davis describes, with minimal detail, Sansing's mother's four marriages and the domestic violence the children witnessed. (ER 349-50.) However, she never mentions the daily physical abuse, poverty, and neglect the children suffered. Davis's report instead paints Sansing's mother, Glenda, as an uneducated woman who tried to provide for her children through welfare and her occasional jobs as a waitress. (ER 355.)

Davis's bare statements that Sansing and his siblings witnessed domestic violence and were not always properly cared for does not begin to describe the abuse and neglect that the Sansing children endured and did not fulfill trial counsel's duties to provide effective penalty-phase representation. *Stankewitz v. Woodford*, 365 F.3d 706, 716 (9th Cir. 2004) ("[C]ounsel's duty is not discharged merely by presenting some limited evidence. Rather, a penalty phase ineffective assistance claim depends on the magnitude of the discrepancy between what counsel did investigate and present and what counsel could have investigated and

presented."); *Lambright v. Schriro*, 490 F.3d 1103, 1121 (9th Cir. 2007) (holding that, despite the fact that counsel traveled for five days to Texas and Louisiana to interview witnesses and submitted a sentencing memorandum listing mitigating factors to the trial judge, trial counsel's "limited, cursory, and incomplete presentation of mitigating evidence" constituted deficient performance); *Douglas v. Woodford*, 316 F.3d 1079, 1090 (9th Cir. 2003) (finding ineffective assistance where trial counsel "introduced some of [the defendant's] social history, [but] did so in a cursory manner that was not particularly useful or compelling").

The discrepancy between the limited mitigation in Davis's report and what the Sansing children actually endured is vast. For instance, Davis states that a welfare worker came to the Sansing home once and found the conditions in the home "unacceptable," without providing any more detail. (ER 348.) Davis did not describe that the utilities were frequently turned off, and there was no water, heat, or food, yet Glenda always had money to go out partying, "do her dancing" and get her "bouffant hairdo." (ER 995; ER 1023.) Nor did she describe how Glenda would abandon the children, often for days without any adult supervision, and the grease in the kitchen sink would be caked up to an inch thick. (ER 975-76; ER 1014.) Davis made no mention of the fact that the children were not permitted to take food out of the refrigerator and, if Glenda found out that they had eaten any of her food, she would beat all of the children. (ER 986-87.) She also did not describe

20

the fact that the children lived in fear of the daily beatings they would receive from Glenda, for no reason, until her arms got tired (ER 1019-20), or how Glenda would terrorize the children by forcing them to pick the hickory switch she would use on whichever child she was about to beat. (ER 391.) Davis also failed to mention that Glenda would have men over at the house regularly and would often keep the door open when she was having sex, allowing the children to see and hear them. (ER 373-74.)

With respect to Glenda's various marriages, Davis simply stated, without providing any details that the children were "exposed weekly to domestic abuse, fueled by [their] mother's and step-father's abuse of alcohol." (ER 349.) Such a limited statement is much different than explaining that the abuse was so severe that the fights ended up with Glenda being taken to the hospital by ambulance and that she would demand that the children go with her. (ER 385; ER 312.) Or that in one incident, Glenda jumped out of the car after she was "smacked" by Silas Skinner, and he ran over her legs with the car, while all of the children were screaming. (ER 384; ER 328.) Nor did she describe how terrified the children were at witnessing their mother being beaten, choked, knocked out of a chair, shoved out of the house, and, more than once, watching her break the window and cut herself to get back inside. (ER 385.) Or worse yet, having to listen to their

mother's screams behind a closed door and not being allowed to move from the couch to help her. (ER 385)

Davis described Glenda's third marriage to Roy Dooley in one paragraph, stating that Sansing described Dooley as a "scum bum" and Susan remembered Sansing being high on marijuana and sniffing gas during this time. (ER 349-50.) Davis did not report how Dooley was six-feet-two-inches tall and "was mean, been in jail, toted a straight blade, [and] liked his whiskey." (ER 988.) Or that Dooley was an alcoholic and would beat Glenda, as well as Sansing and Allen. (ER 374; ER 349; ER 988-89.) When he got drunk, Dooley would make Sansing or Allen physically fight him in the backyard so that he could show them "what a real man can do." (ER 989.) Although Allen was about sixteen years old at the time, and played football, Sansing was only eleven and was small for his size. (ER 989-90.) Dooley would take a belt, pick Sansing up and hit him until Dooley got tired, leaving Sansing covered in bruises. (ER 990; ER 1029; ER 1030.) Davis wholly failed to describe the psychological trauma the Sansing children experienced as a result of living in constant fear. Davis also failed to discover or present any evidence of sexual abuse by Glenda's brother (ER 401), Allen's sexual molestation of his two sisters, Patsy and Susan (*id*.), or the sexual attacks Sansing suffered at the Roebuck Detention Center (Dist. Ct. Dkt. 35 at 16-17).

22

In fact, while Respondents highlight the fact that Davis flew to Alabama to interview Sansing's siblings, Davis only interviewed Allen and Susan for an hour and a half, in a restaurant, simultaneously. (ER 1008.) Witnesses are rarely willing or able to openly discuss sexual and physical abuse in a public space, or in front of others. Furthermore, as revealed during the PCR proceedings, Allen attempted to sexually molest Susan, in addition to sexually molesting his other sister Patsy. (ER 401.) Clearly, speaking to them together would not allow for each witness to fully discuss the traumas that occurred during their childhood.

Given that Davis's limited investigation failed to discover even glaring examples of mitigation, such as Sansing's continuous abuse and neglect at the hands of his mother, trial counsel clearly failed to conduct a proper investigation or to unearth all relevant mitigation information. *Wallace v. Stewart*, 184 F.3d 1112, 1117 (9th Cir. 1999) ("[I]t is imperative that all relevant mitigating information be unearthed for consideration at the capital sentencing phase." (quoting *Caro v. Calderon*, 165 F.3d 1223, 1227 (9th Cir. 1999))); *Mayfield v. Woodford*, 270 F.3d 915, 927 (9th Cir. 2001) ("To perform effectively in the penalty phase of a capital case, counsel must conduct sufficient investigation and engage in sufficient preparation to be able to 'present[] and explain[] the significance of all the available [mitigating] evidence.'" (quoting *William v. Taylor*, 529 U.S. 362, 393 (2000))).

23

### 3.    Presentation of Mitigation at Penalty Phase

"As anemic as the defense counsel's investigation was, his presentation of mitigating evidence at the penalty phase was [even] worse." *Correll v. Ryan*, 539 F.3d 938, 946 (9th Cir. 2008). Trial counsel did not call a single witness to testify, despite the fact that Sansing's brother and mother flew out for the penalty-phase hearing. Nor did trial counsel introduce any evidence. He simply submitted Davis's incomplete and cursory report and allowed Sansing's family members to beg the court for mercy. Such a presentation is deficient. *See id.* (finding trial counsel's failure to put on any affirmative penalty-phase defense, including failure to call a single witness or to introduce any evidence, constituted deficient performance); *Stankewitz*, 365 F.3d at 716-17 (finding ineffective assistance where counsel offered the very general and uncompelling testimony of six witnesses, and merely summarized briefly petitioner's life history "focus[ing] little on actual details of [his] life" during closing argument).

Respondents justify counsel's inactions as a strategic decision to submit a report to the judge based on counsel's familiarity with and "esteem" for Judge Reinstein. (Answering Br. at 48-49, 53-54.) However, a strategic decision can only be made after a reasonable investigation which, as explained in detail above and in the opening brief, trial counsel failed to conduct. *See Correll*, 539 F.3d at 949 ("[D]efense counsel failed to make a reasonable investigation into potential

24

mitigating evidence. Therefore, his decision not to put on a mitigation case cannot be considered to be the product of a strategic choice. An uninformed strategy is not a reasoned strategy. It is, in fact, no strategy at all."). And, even if this Court were to find that trial counsel had conducted a reasonable investigation, it was not reasonable strategy to rest all mitigation presentation on a cold document submitted to the sentencing court, which failed to humanize Sansing. *See Douglas*, 316 F.3d at 1090 (finding deficient performance and prejudice where counsel "introduced some of [the petitioner's] social history, [but] did so in a cursory manner that was not particularly useful or compelling").

Furthermore, in *Correll*, the Ninth Circuit found that trial counsel's strategy for presenting mitigation in a submitted report was objectively unreasonable because it was based on counsel's perceptions of the trial judge. 539 F.3d at 951. The *Correll* court went on to state that basing the presentation of mitigation on the trial judge ignores the fact that trial counsel is required to make a complete record for the Arizona Supreme Court to conduct an independent review. *Id*. ("[E]ven if defense counsel's fears about the judge were legitimate, there is no strategic excuse for failing to put on evidence in support of statutory mitigating factors that the Arizona Supreme Court could have considered in its independent re-weighing of aggravating and mitigating factors."). As in *Correll*, even if trial counsel based his entire mitigation presentation on his perception of Judge Reinstein, he failed to

25

make a proper record for appeal. (*See* ER 593-94.) Such a strategy is unreasonable and constitutes deficient performance.

### 4. Trial Counsel's Consultation with Experts

Respondents justify counsel's failure to present any expert testimony as a "strategic [decision] that followed an extensive mitigation investigation." (Answering Br. at 57.) "Describing [counsel's] conduct as 'strategic' strips that term of all substance." *Bloom v. Calderon*, 132 F.3d 1267, 1277 (9th Cir. 1997) (quoting *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994)). In order for a decision regarding the presentation of expert testimony in mitigation to be "strategic," counsel must (a) hire the appropriate experts, and (b) provide them with the appropriate background information so that they can render accurate opinions. *Caro v. Woodford*, 280 F.3d 1247, 1254-55 (9th Cir. 2002) ("Th[e] duty to provide the appropriate experts with pertinent information about the defendant is key to developing an effective penalty phase presentation.") (citations omitted). Here, trial counsel failed to do both.

Trial counsel did not consult an expert on drug abuse or dependence (ER 585-86), an expert on child or adolescent psychology (ER 588), or an expert on the connection between a dysfunctional family background, drug abuse, and the crime (ER 588-89), even though Ronan acknowledged all three would have been helpful in presenting Sansing's mitigation case. Ronan had no explanation for these

26

failures. (ER 593-94.) Counsel similarly failed to hire a neuropsychologist to determine whether Sansing's history of drug use and head traumas resulted in brain damage. (*See* ER 725.) Of the three experts that counsel did consult, one evaluated Sansing for competency only, one evaluated him to determine whether he had a learning disability, and one did no testing at all. These expert contacts were simply not sufficient to extinguish counsel's duty to investigate. Counsel's failure here to hire the appropriate experts and have them conduct the appropriate evaluations of Sansing cannot be deemed a strategy.

Additionally, counsel utterly failed to provide the experts he did consult with required background documents, such as school records and a personal history, required to render an accurate opinion. (*See, e.g*., ER 580-81.) Such a failure, in and of itself, qualifies counsel's performance as deficient. *See Caro*, 280 F.3d at 1254 ("We have also held that counsel has an affirmative duty to provide mental health experts with information needed to develop an accurate profile of the defendant's mental health.") (citations omitted); *Bloom v. Calderon*, 132 F.3d 1267, 1277 (9th Cir. 1997) (holding that counsel's delay in retaining an expert, "combined with counsel's failure to adequately prepare his expert and then present him as a trial witness, was constitutionally deficient performance"). While the PCR court unreasonably concluded that Ronan must have provided Dr. Menendez with the proper documents because it was his standard practice to do so, Ronan himself

27

acknowledged that the discrepancies between Dr. Menendez's report and the records that existed in Sansing's case supported a finding that Dr. Menendez did not have such records. (ER 612.) Counsel's failure to provide experts with such crucial documents precluded them from basing their "strategy" of whether to present expert testimony on such reports. Counsel's failure to hire the right type of expert, *Caro*, 280 F.3d at 1254, compounded with counsel's failure to provide him or her with the right background materials, *Bloom*, 132 F.3d at 1277, constituted deficient performance.

Furthermore, even if this Court finds that counsel consulted experts and provided them with the requisite background information, counsel was still ineffective for failing to present such expert reports in mitigation. Respondents argue that because Dr. Menendez diagnosed Sansing with anti-social personality disorder, and trial counsel did not consider that report mitigating, counsel was not required to submit such "double-edged" mitigation. (*See, e.g*., Answering Br. at 58.) However, "[t]he Arizona Supreme Court has made it clear that an antisocial personality disorder (sociopathic disorder) is a mitigating factor, even if it does not come up to the level of a factor specifically listed in the Arizona sentencing statute." *Smith v. Stewart*, 140 F.3d 1263, 1270 (9th Cir. 1998) (citing *State v. Thornton*, 929 P.2d 676, 685-86 (Ariz. 1996) and *State v. Stokley*, 898 P.2d 454, 470-71, 473 (Ariz. 1995)). Trial counsel's failure to realize that Dr. Menendez's

28

report was mitigating under Arizona law and his failure to present it constituted deficient performance. *See Lambright*, 490 F.3d at 1125 (finding that counsel's failure to realize that a diagnosis of antisocial personality disorder is a mitigating factor in Arizona contributed to his deficient performance.)

Likewise, the PCR court's unsubstantiated finding that trial counsel did not introduce Dr. Menendez's report for fear of opening the door to the prosecution's rebuttal evidence of antisocial acts was similarly unreasonable. "[A]ll of the so-called 'damaging rebuttal evidence' could, in the hands of a competent attorney, have been used to support [Sansing's] claims of dysfunctional upbringing and continuing mental disorder." *Correll*, 539 F.3d at 955. Counsel's failure to identify and properly use such mitigating evidence constituted deficient performance.

### 5.    Prejudice

Respondents next contend that "the PCR court reasonably determined that, had counsel presented the evidence developed at the PCR hearing at sentencing, Sansing would still have received a death sentence." (Answering Br. at 64.) However, Respondents require too much of Sansing. "In establishing prejudice under *Strickland*, it is not necessary for the habeas petitioner to demonstrate that the newly presented mitigation evidence would necessarily overcome the aggravating circumstances." *Correll*, 539 F.3d at 951-52 (citing *Williams v. Taylor*, 529 U.S. 362, 398 (2000)). Instead, Sansing need only show that counsel's

29

deficient performance was "sufficient to undermine confidence in the outcome," which is "less than the preponderance more-likely-than-not standard." *Summerlin v. Schriro*, 427 F.3d 623, 640, 643 (9th Cir. 2005) (quoting and citing *Strickland v. Washington*, 466 U.S. 668, 693-94 (1984)). Sansing has met that standard by showing that if counsel had properly investigated his mitigation, presented such mitigation to the proper mental health experts, as well as to the court, and presented expert testimony on Sansing's life history, mental deficits, and substance abuse problems, there is a reasonable probability that his mitigation would have been sufficiently substantial to overcome the sole aggravator in this case.

Furthermore, Sansing's prejudice must be viewed in light of the Arizona Supreme Court's *Ring* harmless-error analysis. *See* Claim One, *supra*. If trial counsel had not rendered deficient performance, the Arizona Supreme Court could not have found that no reasonable jury could have viewed Sansing's mitigation differently than the trial judge. *See State v. Sansing* ("*Sansing II*"), 77 P.3d 30, 36-38 (Ariz. 2003). As such, it is reasonably probable that the outcome of Sansing's sentencing would have been different because he would have been remanded for jury sentencing. Therefore, Sansing was prejudiced.

Aside from the standard, Respondents repeatedly contend that Sansing cannot establish prejudice because Dr. Miller's and Dr. French's opinions were not persuasive given that they were based on Sansing's self-reporting and family

30

members' accounts. (Answering Br. at 61.) However, Dr. Bayless's and Dr. Menendez's opinions were similarly based on Sansing's account of events. (ER 887-92.) Just because Dr. Bayless and Dr. Menendez reached a different conclusion, one which supports Respondents' position, does not mean that they were based on more objective evidence.

Respondents also argue that Sansing's horrible childhood is not persuasive mitigation because Sansing's siblings, Susan and Allen, were raised in the same environment but were never convicted of any felonies. (Answering Br. at 61-62 & n.16.) While they may have never been convicted of any felonies, Susan died from drug and alcohol intoxication at the age of 44 and Allen has been accused of sexually molesting two of his sisters. (ER 401.) Clearly the dysfunctional environment in which the Sansing children were raised had a negative impact on their life. Evidence of childhood abuse is the type of "classic mitigation evidence" that should be investigated, developed and presented in mitigation of a capital crime, *see, e.g.*, *Robinson v. Schriro*, 595 F.3d 1086, 1110-11 (9th Cir. 2010) (holding that petitioner had proven prejudice when trial counsel failed to present evidence including petitioner's childhood poverty, abuse, and low average intelligence), and there is simply no corresponding requirement that a defendant's siblings also have criminal histories for such evidence to constitute relevant and weighty mitigation evidence.

31

Respondents further point to the nature of the crime to argue that more mitigation evidence would not be able to outweigh the "weighty" aggravating factor. (Answering Br. at 64.) However, counsel is not excused from presenting compelling mitigation simply because the facts of the crime are brutal. *See Stankewitz*, 365 F.3d at 714 ("[P]resentation of mitigating evidence is vital even where, as here, the aggravating evidence is powerful."); *Lambright*, 490 F.3d at 1127 ("[W]e have held consistently that even in cases involving particularly heinous murders, a defendant can be prejudiced by an attorney's failure to investigate and present mitigating evidence."); *Smith v. Stewart*, 189 F.3d 1004, 1013 (9th 1999) ("The horrific nature of the crimes involved here does not cause us to find an absence of prejudice."); *Hendricks v. Calderon*, 70 F.3d 1032, 1044 (9th Cir. 1995) (finding that "despite the substantial evidence in aggravation, . . . the failure of [defense counsel] to present mitigating evidence rendered the sentencing hearing neither fair nor reliable"). This is especially true in light of the fact that Sansing's death sentence is based on only one aggravating circumstance. *See Lambright*, 490 F.3d at 1126-27 (finding that the defendant was prejudiced by counsel's incomplete presentation of mitigation because the only aggravating factor to overcome was the especially heinous, cruel, or depraved aggravator).

Lastly, Respondents attempt to minimize all of Sansing's mitigation by claiming that it was cumulative to the evidence presented to Judge Reinstein. (*See,*

*e.g.*, Answering Br. at 15, 55, 60-61.) As explained above, the mitigation report submitted to Judge Reinstein did not even mention that Sansing's mother was extremely abusive and neglectful. (*See* ER 344-55.) It provided bare statements regarding the domestic violence the Sansing children witnessed with no description or detail. (ER 349-50.) It also did not mention the sexual abuse Sansing suffered while at a juvenile detention facility. Contrary to Respondents' assertions, the evidence presented at Sansing's PCR evidentiary hearing was new and compelling mitigation evidence that was never presented to the sentencing judge. *See Stankewitz*, 365 F.3d at 717 (finding prejudice even though counsel presented some mitigation evidence because "[a] more complete presentation, including even a fraction of the details [the defendant] now alleges, could have made a difference"); *Lambright*, 490 F.3d at 1124 (holding that even though some mitigation was presented to the sentencing judge, it was "incomplete, uncompelling, and uncorroborated information," thereby prejudicing the defendant); *Correll*, 539 F.3d at 953 n.8 ("While the bare facts of Correll's troubled past were indeed presented to the court [through the pre-sentence report and defense counsel's brief sentencing memorandum], without further investigation and presentation of contextual evidence and argument, such facts served only to demonize Correll rather than to mitigate . . . ."). Accordingly, Sansing has proven that he was prejudiced by counsel's actions.

### III.    Unreasonable Determination of the Facts

Sansing relies on the arguments presented in his Opening Brief in support of his argument that the PCR court made several unreasonable determinations of fact in light of the evidence presented at the evidentiary hearing. In addition, Sansing states the following:

Respondents claim that "the relevant part of Dr. Bayless'[s] testimony is that Sansing raped Calabrese because he saw her vaginal area," and that is what the PCR court based its ruling on. (Answering Br. at 69.) However, that is precisely what makes it an unreasonable determination of the facts, because that statement cannot be true. Respondents claim that "the court was aware . . . that Dr. Bayless was incorrect about Calabrese wearing a dress." (Answering Br. at 69.) Yet, despite the fact that Dr. Bayless was incorrect about the crux of his assertion as to why Sansing committed the rape, the court still adopted Dr. Bayless's conclusion. Furthermore, Sansing has recounted the facts of the crime numerous times, to numerous people, and he has never told anyone else that he raped the victim because he saw her vaginal area. Dr. Bayless and his associate, Dr. Kirkley, made no mention of this fabricated motive in either of their notes of the interview or in Dr. Bayless's report. (*See* ER 939; ER 1087-92; ER 1093-1102.) In fact, Dr. Kirkley has since admitted that Sansing never made such a statement. (PSER 33.) Thus, the PCR court's acceptance of an incredible version of events that was not

corroborated by any other testimony or written document, but was in fact contrary to all other accounts, was an unreasonable determination of fact.

## Claim Seven

**The trial court and the Arizona Supreme Court violated Sansing's Eighth and Fourteenth Amendment Rights to the consideration of all relevant mitigating evidence when, contrary to clearly established federal law, they refused to consider mitigating factors that did not have a "causal nexus" to the crime.**

Sansing stands by the arguments previously advanced in his Opening Brief. In addition, Sansing replies to the following arguments advanced by Respondents.

## I.    Exhaustion

Respondents argue that this claim is partially defaulted. (Answering Br. at 77 n.19.) Respondents assert that Sansing properly raised a claim regarding the trial judge's improper use of a causal nexus test with respect to his difficult childhood and dysfunctional family background but not as to evidence of his family support. (Answering Br. at 77 n.19.) Thus, they argue that the portion of Sansing's claim regarding family support is unexhausted. However, under the fair presentation doctrine, Sansing need only have described the operative facts and legal theory on which his claim was based. *Picard v. Connor*, 404 U.S. 270, 277-78 (1971). The ultimate question for disposition of whether the state courts applied an unconstitutional causal nexus test to Sansing's mitigation was undoubtedly presented to the state courts. *See id*. ("Obviously there are instances in which the

35

ultimate question for disposition will be the same despite variations in the legal theory or factual allegations urged in its support. . . . We simply hold that the substance of a federal habeas corpus claim must first be presented to the state courts.") (internal citations and quotation marks omitted).

In his opening brief on direct appeal, Sansing laid out, in detail, well-settled federal law on the consideration of mitigation evidence. (SER 2181-87.) Specifically, Sansing discussed the Supreme Court decisions in *Lockett v. Ohio*, *Eddings v. Oklahoma*, and *Penry v. Lynaugh*, and their requirements that a sentencer be able to consider all mitigation. (SER 2181-85.) Sansing also argued that the trial judge improperly used a causal nexus test to limit his mitigation. (SER 2187.) Thus, Sansing clearly provided the Arizona Supreme Court with the facts and legal theory on which his federal claim was based and an opportunity to rule on his claim that his mitigating evidence was limited due to an unconstitutional causal nexus test. Simply adding an additional example of the court's errors in both resolving his appellate claims and in conducting its independent review does not result in a fundamentally altered claim, as Respondents suggest. The Arizona Supreme Court had the opportunity, and in fact took that opportunity, to rule on this claim. *State v. Sansing* ("*Sansing I*"), 26 P.3d 1118, 1129-30 (Ariz. 2001). Given that the Arizona Supreme Court has had its opportunity to address this claim, the concerns of comity and federalism are no longer present and this Court

36

may review it. *See Rose v. Lundy*, 455 U.S. 509, 518 (1982) ("[F]ederal courts apply the doctrine of comity, which 'teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter.'") (citations omitted).

Furthermore, because the Arizona Supreme Court performed an exacting review of all aggravating and mitigating factors in Sansing's case during its independent review, it had the opportunity to review the trial judge's use of a causal nexus test with respect to family support as well as Sansing's troubled childhood and family background. *See Sansing I*, 26 P.3d at 1131. Even if Sansing had not raised this claim in his appellate briefing, it would be exhausted through the independent review process like the claim in McKinney's case. *McKinney v. Ryan*, 813 F.3d 798 (9th Cir. 2015) (en banc). In that case, the district court found the claim exhausted through the independent review process, and decided it on the merits. *McKinney v. Schriro*, CV-03-0774-PHX-DGC, ECF No. 75 at 30 (D. Ariz. Aug. 10, 2009). On appeal, Respondents did not raise this argument in opposition to McKinney's claim. *See McKinney v. Ryan*, No. 09-99018, ECF No. 21 at 27-28 (9th Cir. Oct. 1, 2012) (supplemental answering brief); *see also McKinney*, No. 09-99018, ECF No. 54 (9th Cir. Nov. 7, 2013) (response to petition for rehearing en banc). Respondents do not offer any reason why Sansing's case should be treated

differently than McKinney's. As a result, Sansing has fully exhausted this claim with respect to all mitigation evidence limited by a causal nexus test. And, any failure to review this claim would constitute a fundamental miscarriage of justice because the trier of fact did not properly consider Sansing's mitigation and, therefore, improperly imposed his death sentence.

## II.    Merits

Respondents devote a large portion of their response to arguing that *McKinney v. Ryan*, 813 F.3d 798 (9th Cir. 2015) (en banc), does not apply to Sansing's case, or arguing that *McKinney* was wrongly decided because neither the Maricopa County Superior Court nor the Arizona Supreme Court violated *Eddings v. Oklahoma*, 455 U.S. 104 (1982), in Sansing's case. (Answering Br. at 75-83.) Respondents assert that the Arizona Supreme Court "*considered* the mitigation proffered[]," which is "all that is required by the Constitution." (Answering Br. at 78, 79.) This argument cannot carry the day.

First, contrary to Respondents' arguments, the Arizona Supreme Court explicitly stated that it required such a link in Sansing's case. *See Sansing I*, 26 P.3d at 1129 ("Arizona law states that a difficult family background is not relevant unless the defendant can establish that his family experience is linked to his criminal behavior.") (citation omitted). Second, this Court need not speculate about a silently imposed causal nexus test since both the sentencing judge and the

38

Arizona Supreme Court repeatedly and explicitly made clear that they were employing such a requirement. (*See* ER 267 ("[T]here is nothing in the defendant's childhood or family background that provides a causal link to the horrific crime committed by the defendant.")); *Sansing II*, 77 P.3d at 39 (finding that Sansing failed to "demonstrate any causal link between his crimes and his childhood and lack of education"). The language here is stronger evidence of the application of the unconstitutional causal nexus test than was present in either the *McKinney* or *Hedlund* cases, where the Arizona Supreme Court noted that such evidence "does not necessarily have substantial mitigating weight." *Hedlund v. Ryan*, 854 F.3d 557, 586 (9th Cir. 2017) (citing *McKinney*, 813 F.3d at 820).

In addition, this Court has already soundly rejected the argument that Respondents are making. In *McKinney*, the en banc court addressed the previous opinions from the court requiring that there be a "clear indication" requiring a causal nexus in the state court rulings before a reviewing court could find that the court violated *Eddings*. The *McKinney* court held that this test was "an inappropriate and unnecessary gloss on the deference already required under § 2254(d)," overruling the court's previous decisions applying this "clear indication" test. *McKinney*, 813 F.3d at 819. Were there a question about the application of the test in Sansing's case, this language refutes it. And, Respondents acknowledge that the Arizona Supreme Court applied caselaw that created a bar to

the consideration of such evidence in Sansing's case. (Answering Br. at 80.) While they attempt to argue that the citation of these cases does not mean that they were used in the analysis, that contention was rejected in *McKinney*.

Further, the second part of Respondents' argument ignores a key portion of the *Tennard v. Dretke*, 542 U.S. 274, 284-85 (2004), analysis. It is not enough that a state court simply give lip service to mitigating evidence by saying they "considered" it. There cannot be any barriers in place preventing a sentencer from giving effect to the mitigation evidence. *See id.* at 284. "Giving effect" to mitigating evidence means that the sentencer must be free to make an individualized determination and thus, be able to return a life sentence based upon the alleged "nexus free" mitigation. A substantial and longstanding body of Arizona precedent dictated that Arizona sentencing judges, and the Arizona Supreme Court, could not show leniency to a defendant who did not show his mitigation was connected to the crime. *See, e.g.*, *State v. Djerf*, 959 P.2d 1274, 1289 (Ariz. 1998) (finding that family dysfunction "can be mitigating only when actual causation is demonstrated between early abuses suffered and the defendant's subsequent acts."); *State v. Wallace*, 773 P.3d 983, 986 (Ariz. 1989) ("A difficult family background is a relevant mitigating circumstance if a defendant can show that something in that background had an effect or impact on his behavior that was beyond the defendant's control.") Clear and persistent precedent, holding that

40

"nexus free" mitigation is worthy of little or no relevance or weight, prevents the sentencer from giving effect to the mitigation in the form of a life sentence. Arizona essentially pre-assigned a value to "nexus free" evidence that prevented individualized sentencing.

For Respondents, the difference between finding that mitigating evidence is entitled to "minimal weight" and failing to consider that evidence is the difference between complying with and rejecting *McKinney* and *Eddings*. This is not a constitutionally significant distinction; it is an exercise in semantics. If mitigating evidence is relevant, the sentencing body must consider it and the law must give the sentencing body a vehicle for giving effect to it. *See Smith v. Texas*, 543 U.S. 37, 45 (2004); *Tennard*, 542 U.S. at 284-85 (quoting *McKoy v. North Carolina*, 494 U.S. 433, 440-41 (1990)); *Lockett v. Ohio*, 438 U.S. 586, 604 (1978). Under Arizona law, if "the defendant fail[ed] to prove" the causal nexus, the "circumstance will not be considered mitigating." *State v. Hoskins*, 14 P.3d 997, 1022 (Ariz. 2000). The causal nexus requirement works to prevent a life sentence. *See Styers v. Schriro*, 547 F.3d 1026, 1035 (9th Cir. 2008), *cert. denied*, 558 U.S. 932 (2009). As *Smith* and *Tennard* stressed and *McKinney* expressly held, concluding that mitigating evidence is "not relevant" or not proven due to the lack of a causal nexus is precisely the same as not considering it mitigating at all.

41

Further, just because a court states that it "considered" the mitigation by giving it minimal weight does not mean that the sentencer had the opportunity to actually give effect to the mitigation as required by *Penry I. See Penry v. Lynaugh*, 492 U.S. 302, 319 (1989) ("Thus, the sentence imposed at the penalty stage should reflect a reasoned moral response to the defendant's background, character, and crime.") (quoting *California v. Brown*, 479 U.S. 538, 545 (1987) (O'Connor, J., concurring)). And, although Respondents argue that even if error did occur, it is harmless under *Brecht v. Abrahamson*, 507 U.S. 619 (1993) (Answering Br. at 83-93), they are incorrect.

There is only one aggravating circumstance in this case, and there is abundant and compelling mitigation evidence. Sansing has already discussed the compelling mitigation evidence that was before the judge at sentencing, including his substantial drug use and impairment, his abusive and damaging childhood and adolescence, including his lack of education and below-average IQ, and his family support. (Opening Br. at 3-13, 79-82.) This evidence is more than enough to show that the state courts' unconstitutional refusal to consider this evidence had a substantial and injurious effect on the verdict. Sansing offered significant mitigating evidence that created a reasonable probability of a life sentence for his crime, but neither the trial court nor the Arizona Supreme Court gave effect to it because those courts could not consider it under Arizona law. A reasonable

sentencer, not applying an unconstitutional causal nexus test, may well have concluded that this mitigation evidence was sufficiently substantial to call for leniency, especially in a case like this one where there is only one aggravating factor.

By contrast, in *McKinney*, the panel majority found that the exclusion of McKinney's evidence of PTSD "would have had a substantial impact on a capital sentencer who was permitted to evaluate and give appropriate weight to it as a nonstatutory mitigating factor," even though "there were important aggravating factors in t[he] case." *McKinney*, 813 F.3d at 823. The sole aggravating factor here makes clear that this case is less aggravated than that in *McKinney*. With that backdrop, Respondents cannot win on an argument that the outcome could not be different when the additional, improperly excluded mitigation evidence is considered. The relevant inquiry here is whether "a federal judge in a habeas proceeding is in grave doubt" about the effect of the error, and "the 'risk of doubt' is placed 'on the State.'" *Id.* at 822 (citation omitted). The error in Sansing's case is at least as egregious as that in *McKinney*, especially in light of the fact that the Arizona Supreme Court struck one of the aggravating circumstances found by the trial judge in this case on direct appeal. Respondents have not carried their burden here. Because this evidence was not considered on the basis that Sansing failed to establish a causal connection between this mitigating evidence and the crime, it is

impossible to say "'with fair assurance . . . that the judgment was not substantially swayed by the error[.]'" *See McKinney*, 813 F.3d at 822 (quoting *Kotteakos v. United States*, 328 U.S. 750, 765 (1946)). This Court should find that the exclusion of this evidence had a "substantial and injurious effect or influence" on the sentencing decision in Sansing's case and grant him relief. *Id.* (quoting *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995)).

And, as further prejudice to Sansing, the Arizona Supreme Court deployed the causal nexus requirement as part of its *Ring* harmlessness review, which required the court to determine whether a reasonable jury could have found that the mitigating factors were sufficiently substantial to call for leniency. *Sansing II*, 77 P.3d at 33. Respondents themselves acknowledge that the analysis in these two claims is related. (Answering Br. at 83 n.20.) The crux of the court's determination that a jury would not have weighed Sansing's mitigating evidence any differently than the trial judge, including the non-statutory mitigation, was the fact that Sansing did not establish a causal nexus between his difficult childhood, drug use, dysfunctional family, family support and the crime. *See id*. at 39 ("Sansing, [h]owever, did not demonstrate any causal link between his crimes and his childhood and lack of education. Therefore, a reasonable jury could have accorded these two factors only minimal weight."). However, without unconstitutionally limiting a jury from giving effect to Sansing's mitigation, a rational juror could

44

have viewed Sansing's mitigation differently. The state court's use of a causal nexus test to limit mitigating evidence was contrary to United States Supreme Court precedent, was not harmless, and Sansing is entitled to relief.

Finally, Respondents argue that the Supreme Court in *Hurst* did not overrule *Clemons*, even though they acknowledge the Court overruled the cases on which the Court in *Clemons* relied in reaching its decision. (Answering Br. at 90 n.21.) Sansing stands by his argument that in light of the Court's decision in *Hurst*, the *Clemons* opinion is no longer supported by law. Because the Court in *Hurst* found that the weighing decision in a capital case is a finding of fact that must be decided by the jury, the once-valid procedure of allowing a state appellate court to reweigh aggravating and mitigating evidence after striking a statutory aggravating circumstance as invalid is no longer proper. The cases the Court relied on in *Clemons* in reaching its decision, *Spaziano v. Florida*, 468 U.S. 447 (1984), and *Hildwin v. Florida*, 490 U.S. 638 (1989), were decided prior to *Ring v. Arizona*, 536 U.S. 584 (2002), and held respectively that the Sixth Amendment does not require a jury to impose a sentence of death or find the aggravating circumstances making a defendant eligible for the death penalty. *Clemons*, 494 U.S. at 745-46. These cases were expressly overruled by the Court in *Hurst*. 136 S. Ct. at 623-24. Therefore, the reasoning of *Clemons* is no longer valid in light of *Ring* and *Hurst*, and should not be applied in Sansing's case to allow the Arizona Supreme Court to

45

conduct a new independent review, rather than a new sentencing proceeding before a jury.

### Claim Eight

**Sansing's guilty plea was not knowing, intelligent, or voluntary because the written factual basis established an aggravating factor without Sansing's waiver of privilege against self-incrimination, in violation of the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.**

Sansing stands by the arguments previously advanced in his Opening Brief. In addition, Sansing replies to the following arguments advanced by Respondents.

### I. Exhaustion

Respondents contend that this claim is partially exhausted and partially defaulted. (Answering Br. at 94.) They argue that Sansing fairly presented the Fifth and Fourteenth Amendment arguments to the state courts but not the Eighth Amendment argument. (*Id.*) However, Sansing's entire claim is based on the fact that the factual basis of his guilty plea established an aggravating factor without his waiver of a privilege against self-incrimination. Thus, the F(6) aggravator could not have been established without his involuntary admissions. In light of the fact that aggravating factors in capital cases exist solely to satisfy the requirements of the Eighth Amendment to the United States Constitution, any challenge to the existence of an aggravating factor necessarily sounds in the Eighth Amendment. *See Zant v. Stephens*, 462 U.S. 862, 877 (1983). Because Sansing's claim rests on a

challenge to the finding of the aggravating factor of "heinous, cruel or depraved," he has adequately exhausted the Eighth Amendment portion of his argument and is entitled to a merits ruling on that claim.

The district court did not address Respondents' argument in its decision, but did not specifically address any Eighth Amendment arguments either. (ER 30-33.) If the Court were to find Claim Eight was not fully exhausted in state court and therefore procedurally defaulted, as noted in the proceedings below, Sansing can establish cause and prejudice for the default in light of the constitutionally deficient performance of his counsel in post-conviction proceedings pursuant to *Martinez v. Ryan*, 566 U.S. 1 (2012). (*See* Dist. Ct. Dkt. 35 at 89-96.)

Furthermore, as Sansing also argued below, failure to review this claim would constitute a fundamental miscarriage of justice. Sansing's death sentence was affirmed based on this sole aggravating factor. *See Sansing I*, 26 P.3d at 1123-30. This factor was not supported by sufficient evidence to establish it beyond a reasonable doubt and the only reason the courts found this factor to exist was based on Sansing's unknowing admissions. Without the finding of this factor, Sansing would not be eligible for the death penalty under applicable state law. As such, failure to review the due process claims would result in a fundamental miscarriage of justice.

## II.     Merits

Respondents misconstrue the issue in this claim and argue that Sansing was not prejudiced because he would have still pleaded guilty given his strong desire to save the victim's family and his children from a prolonged trial. (Answering Br. at 104.) The question is not whether Sansing would have ultimately pleaded guilty; the question is whether Sansing would have signed a factual basis and stipulation that violated his right against self-incrimination if he had been properly advised of his rights. Had Sansing known that the written factual basis would not solely be used to guarantee his conviction, but rather used to guarantee his death sentence, he would not have stipulated to such facts. Given that Sansing did not need the prosecutor's approval to plead guilty to all charges in the indictment, Sansing would not have knowingly signed the factual basis and stipulation drafted by the prosecution if he understood the consequences. Thus, whether he would have ultimately pleaded guilty is irrelevant.

Respondents also heavily rely on the fact that Sansing expressly agreed to the plea and the factual basis, initialed portions of the plea, and affirmed that he was giving up his rights during the court's oral colloquy. (Answering Br. at 100-01.) Sansing has never denied that he signed the plea or agreed to the factual basis and stipulation. His entire claim is that he did not do so knowingly, intelligently, or voluntarily; not that he did not do so at all. Sansing did not understand the

consequences of the factual basis and stipulation and, therefore, his plea was not knowing, intelligent, or voluntary. Given that trial counsel apparently did not even understand the consequences of the written factual basis, as evidenced by the fact that his counsel attempted to argue that the victim was unconscious in the sentencing memorandum, not realizing that the stipulation had already admitted the converse, Sansing clearly was not advised of the consequences of his guilty plea. (*See* ER 1151-52.) Thus, whether Sansing signed the factual basis or made statements expressing his desire to plead guilty does not mean that he understood the consequences of his plea agreement, as required by Supreme Court precedent. *See Boykin v. Alabama*, 395 U.S. 238, 243-44 (1969); *Johnson v. Zerbst*, 304 U.S. 458 (1938).

Lastly, Respondents attempt to argue that the written factual basis and stipulation were not a part of a guilty plea, but rather were "akin to an evidentiary stipulation," for which the Supreme Court does not require knowing, intelligent, and voluntary waivers. (Answering Br. at 102.) Respondents offer no support for such an assertion. (*Id.*) While Respondents cite to *Florida v. Nixon*, 543 U.S. 175 (2004), the Supreme Court specifically distinguished the facts in that case from a case involving a guilty plea. The Court found that because "Nixon retained the rights accorded a defendant in a criminal trial," including the right to a trial and the right against self-incrimination, he was not afforded the same protections given to

a defendant who was pleading guilty. *Id*. at 188. Specifically, citing to *Boykin*, the *Nixon* Court reiterated that when a defendant pleads guilty, it can be based solely on his knowing consent. *Id*. at 187. Given that Sansing's factual basis and stipulation were offered only to support his guilty plea, the Supreme Court's rigorous protections requiring a knowing, voluntary, and intelligent waiver similarly apply.

### Claim Twelve

**The trial court violated Sansing's rights under the Eighth and Fourteenth Amendments to the United States Constitution when it failed to find and/or consider the victim's daughter's wishes as a mitigating factor.**

Sansing stands by the arguments previously advanced in his Opening Brief. However, Sansing replies to the following specific arguments advanced by Respondents.

Respondents argue that since the Supreme Court's decisions in *Booth v. Maryland*, 482 U.S. 496 (1987), and *Payne v. Tennessee*, 501 U.S. 808 (1991), only relate to a victim's sentencing recommendation against a defendant, there is no clearly established federal law on the subject. (Answering Br. at 108-09, 110.) In the alternative, Respondents argue that evidence can only be mitigating if it relates to the defendant's character, propensity, record, or the circumstances of the crime, and, therefore, the victim's daughter's wishes do not qualify as mitigation. (Answering Br. at 111-12.) Respondents are incorrect on both fronts. United States

Supreme Court precedent on what constitutes mitigating evidence has long been settled. The only constitutional limit to evidence offered in mitigation of a crime is relevance. *Boyde v. California*, 494 U.S. 370, 377-78 (1990) ("The Eighth Amendment requires that the jury be able to consider and give effect to all relevant mitigating evidence offered by Petitioner."). Furthermore, relevance has been broadly defined to mean any evidence that might serve as a basis for a sentence less than death. *See Lockett v. Ohio*, 438 U.S. 586, 604 (1978); *Eddings v. Oklahoma*, 455 U.S. 104 (1982); *Skipper v. South Carolina*, 476 U.S. 1, 4 (1986). A plea for leniency from the victim's ten-year-old daughter, who is directly impacted by the crime, could reasonably have been found to warrant a sentence less than death. The Arizona Supreme Court's ruling contradicts longstanding Supreme Court authority broadly defining mitigating evidence and Sansing is entitled to relief.

*Uncertified Issue*

**Claim Four**

**Sansing was denied effective assistance of counsel in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution because trial counsel failed to properly advise Sansing about the consequences of his plea, stipulated factual basis, and sentencing stipulation.**

Pursuant to Ninth Circuit Rule 22-1(f), Respondents chose not to respond to this claim because it was raised as an uncertified issue. (Answering Br. at 2 n.1.)

Sansing reiterates his request that the Court issue a certificate of appealability on this claim and requests supplemental briefing to allow Respondents an opportunity to respond to the claim on the merits, and Sansing an opportunity to reply.

## Conclusion

For the preceding reasons, Sansing respectfully requests that this Court reverse the district court's order denying his federal habeas corpus petition and remand the case to the district court with orders to grant the writ of habeas corpus and return Sansing's case to the state courts for further proceedings. In the event this Court concludes that factual issues relevant to the issues addressed herein remain unresolved, Sansing requests that the case be remanded to the district court for discovery and an evidentiary hearing.

Respectfully submitted:                    August 2, 2017.

Jon M. Sands
Federal Public Defender
Jennifer Y. Garcia


s/Jennifer Y. Garcia
Attorney for Petitioner-Appellant

**Statement of Related Cases**

I certify that there are no cases pending before this Court that are related to this case within the meaning of 9th Cir. R. 28-2.6.

s/Jennifer Y. Garcia
Attorney for Petitioner-Appellant

## Certificate of Compliance

This brief exceeds the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), but complies with the Court's order regarding the length of the replacement reply brief. (Ninth Cir. ECF No. 44.) It contains 12,246 words, excluding the parts exempt under Fed. R. App. P. 32(a)(7)(B)(iii). It was prepared in a proportionately spaced typeface (Times New Roman, a Windows system font) of size 14 points, double spaced, using Word 2010.

s/Jennifer Y. Garcia
Attorney for Petitioner-Appellant

54

**Certificate of Service**

I certify that on August 2, 2017, I transmitted the foregoing Appellants'
Replacement Reply Brief using the Appellate CM/ECF system for filing and
transmittal of a Notice of Docket Activity to the following ECF registrants:

Clerk of Court
James R. Browning U.S. Courthouse
95 7th Street
San Francisco, California 94103

Lacey Gard
Assistant Attorney General
1275 West Washington Street
Phoenix, AZ 85007


s/Robin Stoltze
Assistant Paralegal
Capital Habeas Unit